UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
HUMBERTO RESTREPO, as Chairman of
the Joint Industry Board of the Electrical
Industry,

        Plaintiff,                                    REPORT AND
                                                           RECOMMENDATION
    -against-                                    24 CV 4831 (OEM)(RML)

INLINE CABLE CORP. D/B/A INLINE
CABLE CORPORATION INC. A/K/A
INLINE CABLE TECHNOLOGIES INC.
A/K/A INLINE TECHNOLOGIES,

        Defendant.
----------------------------------------------------------X
LEVY, United States Magistrate Judge:

        By order dated December 3, 2024, the Honorable Orelia E. Merchant, United States District Judge, referred plaintiff's motion for default judgment to me for report and recommendation. For the reasons stated below, I respectfully recommend that the motion be granted.

## BACKGROUND

        Plaintiff Humberto Restrepo ("plaintiff"), as Chairman of the Joint Industry Board of the Electrical Industry (the "Joint Industry Board"), filed this case on July 11, 2024 against defendant Inline Cable Corp. d/b/a Inline Cable Corporation Inc. a/k/a Inline Cable Technologies Inc. a/k/a Inline Technologies ("defendant" or "Inline"), asserting claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, Pub. L. No. 96-364, 94 Stat. 1208. (Complaint, dated July 11, 2024 ("Compl."), Dkt. No. 1.) Plaintiff seeks a judgment for withdrawal liability arising from defendant's cessation of pension benefit contributions to the Pension Trust Fund of the Pension Hospitalization and Benefit Plan of the Electrical Industry

(the "Pension Fund"), plus interest, liquidated damages, and attorney's fees and costs. (Id.; Plaintiff's Memorandum of Law, dated Dec. 2, 2024 ("Pl.'s Mem."), Dkt. No. 17, at 15.) Plaintiff properly served defendant with the summons and complaint. (See Affidavit of Service of Elizabeth Ostman, sworn to Aug. 22, 2024 ("Ostman Aff."), Dkt. No. 8; see also Declaration of Adrianna R. Grancio, Esq., dated Dec. 2, 2024 ("Grancio Decl."), Dkt. No. 16, ¶¶ 7, 8; Exs. C-E.) Defendant failed to answer or move with respect to the complaint, and the Clerk of the Court noted its default on October 11, 2024. (Clerk's Certificate of Default, dated Oct. 11, 2024, Dkt. No. 13.)

Inline is bound by a collective bargaining agreement ("CBA") with the Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union") that requires it to remit hourly contributions at rates specified in the CBA to plaintiff, the administrator for the Pension Fund and other multiemployer benefit funds affiliated with the Union, on behalf of each employee who performed work under the CBA. (Compl. ¶¶ 4, 10, 14; Grancio Decl. ¶ 12, Ex. H.) The Pension Fund is a defined benefit pension plan subject to Title IV of ERISA, 29 U.S.C. §§ 1301-1461, a "multiemployer plan" within the meaning of section 3(37) of ERISA, 29 U.S.C. § 1002(37), an "employee pension benefit plan" within the meaning of section 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A), and has a joint labor-management Board of Trustees in accordance with section 302(c)(5) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(c)(5). (Compl. ¶¶ 15-16.) The Joint Industry Board is the administrator of the Pension Fund within the meaning of section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A). (Id. ¶ 17.) The Joint Industry Board and its members, including plaintiff, are "fiduciaries" of the Pension Fund within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). (Id.)

In mid-2023, defendant permanently ceased to have an obligation to contribute to the Pension Fund. (Id. ¶ 18.) Defendant thereby effected a "complete withdrawal" from the Pension Fund within the meaning of ERISA § 4203(a), 29 U.S.C. § 1383(a), and incurred withdrawal liability to the Pension Fund under ERISA §§ 4201 and 4211, 29 U.S.C. §§ 1381 and 1391. (Id. ¶ 19.) Withdrawal liability was calculated by the Pension Fund's actuary using the calculation methods set out in ERISA § 4211(b)(1), 29 U.S.C. § 1391, and adopted by the Pension Fund in its Trust Agreement, in the amount of $164,962. (Id. ¶¶ 20-21; see also Grancio Decl. ¶¶ 39-41, Ex. I (Trust Agreement), Ex. L (Actuary's Report).)

By letter dated March 25, 2024 (the "Notice and Demand Letter"), the Joint Industry Board notified defendant that it had incurred withdrawal liability to the Pension Fund in the amount of $164,962, payable in six monthly payments of $24,256 and a final seventh payment of $19,427, with the first payment due on May 1, 2024. (Compl. ¶ 21; see also Grancio Decl. ¶ 28, Ex. K (Notice and Demand Letter).) The Notice and Demand Letter also gave defendant ninety days from receipt to (1) ask the Trustees to review any specific matter relating to the determination of defendant's withdrawal liability and schedule of payments, (2) identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to defendant, and (3) furnish any additional relevant information to the Trustees. (See Grancio Decl. ¶ 29, Ex. K.)

By letter dated May 2, 2024 (the "Demand Letter"), plaintiff informed defendant that it had failed to make the first monthly payment of $24,256 by May 1, 2024. (See Compl. ¶ 27; Grancio Decl. ¶ 32, Ex. L.) The Demand Letter directed defendant to make payment no later than July 2, 2024, and warned that otherwise the entire withdrawal liability would be immediately payable. (Compl. ¶ 28; Grancio Decl. ¶ 32, Ex. L.)

3

To date, defendant has neither disputed nor paid any amount of the withdrawal liability assessment. (Compl. ¶¶ 29-30; Grancio Decl. ¶¶ 33-35.) Plaintiff now seeks a judgment representing withdrawal liability in the amount of $164,962, interest thereon at the rate of eight percent per month through the date of judgment, liquidated damages calculated as twenty percent of the unpaid principal in the amount of $32,992.40, and attorney's fees and costs in the amount of $6,818.96. (Pl.'s Mem. at 6.)

## DISCUSSION

### A. Default Judgment Standard

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here. FED. R. CIV. P. 55(a). Second, after a default has been entered against the defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). To grant a default judgment, the court must ensure that the plaintiff took all the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit. US Flour Corp. v. Certified Bakery, Inc., No. 10 CV 2522, 2012 WL 728227, at *4 (E.D.N.Y. Mar. 6, 2012) (internal quotation marks and citation omitted) ("A court may not properly enter a default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process.").

Here, plaintiff has demonstrated that defendant was properly served with the summons and complaint. (See Ostman Aff.) Plaintiff has also demonstrated that it served the

4

Motion for Default Judgment and accompanying submissions on defendant in compliance with Local Civil Rule 55.2(a). (See Certificate of Service of Adrianna R. Grancio, Esq., dated Dec. 4, 2024, Dkt. No. 18.)

### B. Standing

Standing is an "irreducible constitutional minimum." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Therefore, the court must evaluate whether a plaintiff has standing even where standing is not challenged. See Garnet v. Ramos Bros. Inc., No. 16 CV 2792, 2017 WL 590323, at *1 (E.D.N.Y. Feb. 13, 2017) (citation omitted). "To establish standing, a plaintiff must prove: '(1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision.'" Hennessy by & through Hennessy v. 194 Bedford Ave. Rest. Corp., No. 21 CV 5434, 2022 WL 4134502, at *2 (E.D.N.Y. Aug. 8, 2022) (quoting Kreisler v. Second Ave. Diner Corp., 731 F.3d 184, 187 (2d Cir. 2013) (per curiam)).

"ERISA is a comprehensive federal law that sets standards for private retirement and health plans, governs their administration, and generally preempts state regulation of benefits plans." Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B, AFL-CIO v. C.M. Ashland Constr., 714 F. Supp. 3d 167, 176 (E.D.N.Y. 2024) (citing ERISA § 514(a) (29 U.S.C. § 1144(a))). "ERISA vests the Court with jurisdiction over civil actions brought by fiduciaries of employee benefit plans to enforce provisions of such plans." Id. (quoting Trs. of Loc. 7 Tile Indus. Welfare Fund v. City Tile, Inc., No. 10 CV 322, 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), report and recommendation adopted, 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011); and citing 29 U.S.C. § 1132(a)(3)

5

(permitting fiduciaries of a plan to bring an ERISA action)). Here, plaintiff is a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and the Pension Fund is a "multiemployer plan" within the meaning of ERISA § 3(37), 29 U.S.C. § 1002(37), and an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). (Compl. ¶¶ 16, 17); see LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997) (explaining the broad, functional definition of fiduciaries under ERISA). Accordingly, plaintiff has standing to recover withdrawal liability under ERISA.

### C. Withdrawal Liability

Once liability is established, the court must ascertain damages with "reasonable certainty." Hosking v. New World Mortg., Inc., 570 F. App'x 28, 31 (2d Cir. 2014) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). Under ERISA § 4201, 29 U.S.C. § 1381, if an employer who is required to contribute to a multiemployer plan withdraws from that plan, the employer becomes subject to withdrawal liability to the fund for the proportionate share of the fund's unfunded vested benefits. See Trs. of Gen. Bldg. Laborers' Loc. 66 Pension Fund v. J.M.R. Concrete Corp., No. 19 CV 1214, 2023 WL 6385803, at *1 (E.D.N.Y. Sept. 29, 2023). An employer completely withdraws from a plan by "(1) permanently ceas[ing] to have an obligation to contribute under the plan, or (2) permanently ceas[ing] all covered operations under the plan." 29 U.S.C. § 1383(a). To recover for withdrawal liability from an employer, a plan's sponsor must determine the amount of liability, notify the employer of that amount, include with the notice a schedule for payment, and demand payment in accordance with the included schedule. See ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc., 846 F. 2d 879, 881 (2d Cir. 1988); Amalgamated Lithographers of Am. v. Unz & Co., 670 F. Supp. 2d 214, 221 (S.D.N.Y. 2009) (citing 29 U.S.C. §§ 1382, 1399).

An employer may, within ninety days of receiving the withdrawal liability notice, request review of the withdrawal determination by the plan sponsor. See 29 U.S.C. § 1399(b)(2)(A). Either party may then initiate an arbitration proceeding to address any unresolved disputes regarding the plan sponsor's determination of liability. See id. § 1401(a)(1). If no arbitration hearing is initiated within the statutorily mandated timeframe, then the plan sponsor's determination of the withdrawal liability becomes final and binding and must be paid in accordance with the schedule provided by the plan. Id. § 1401(b)(1). "[N]o documentation is required to support a finding of withdrawal liability if the defendant fails to initiate arbitration." Trs. of Loc. 813 Pension Tr. Fund v. A.A. Danzo Sanitation, Inc., No. 23 CV 8493, 2024 WL 4250355, at *3 (E.D.N.Y. Aug. 5, 2024), report and recommendation adopted, (E.D.N.Y. Sept. 23, 2024.)

In the instant case, the Pension Fund is a "multiemployer plan" within the meaning of ERISA § 3(37), 29 U.S.C. § 1002(37), and an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and defendant was obligated to pay contributions to the Pension Fund pursuant to the terms of the CBA. (Compl. ¶¶ 10-14.) Plaintiff alleges that in mid-2023, defendant permanently ceased to have an obligation to contribute to the Pension Fund; it thereby effected a "complete withdrawal" from the Pension Fund within the meaning of ERISA § 4203(a), 29 U.S.C. § 1383(a), and incurred withdrawal liability to the Pension Fund under ERISA §§ 4201 and 4211, 29 U.S.C. §§ 1381 and 1391. (Compl. ¶¶ 18-19.) The Pension Fund notified defendant on March 25, 2024 that defendant had effected a complete withdrawal and that defendant's withdrawal liability was calculated to be $164,962. (Id. ¶ 21.) The Pension Fund also provided a payment schedule, according to which defendant was to pay six monthly payments of $24,256 and a final seventh payment of $19,427,

with the first payment due on May 1, 2024.  (Id.)  According to plaintiff, defendant has not made any payment or challenged the Pension Fund's determination of defendant's withdrawal liability. (Id. ¶¶ 26, 29-30.)  These allegations, accepted as true, are sufficient to establish defendant's liability under ERISA § 4219, 29 U.S.C § 1399.

"To establish a claim for unpaid withdrawal liability, a plaintiff must show only that it complied with statutory procedural requirements."  Div. 1181 Amalgamated Transit Unions v. D&A Bus Co., 270 F. Supp. 3d 593, 608 (E.D.N.Y. 2017) (citing Trs. of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc., No. 03 CV 4530, 2004 WL 67480, at *2 (S.D.N.Y. Jan 15, 2004)).  To satisfy the procedural requirements, the plaintiff must: "(1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule."  Id. at 608-09.  If, after receiving notice and demand of payment, the employer fails to initiate arbitration, then the employer waives any right to contest the amount of withdrawal liability it owes, and the district court will not make an independent determination as to the reasonableness of the withdrawal liability calculations.  Gesualdi v. Seacoast Petroleum Prods., Inc., 97 F. Supp. 3d 87, 98 (E.D.N.Y. 2015); see also Trs. of Loc. 813 Ins. Tr. Fund v. Freedom Demolition, Inc., No. 13 CV 2701, 2014 WL 5305983, at *5 (E.D.N.Y. Oct. 15, 2014) ("By failing to initiate an arbitration proceeding . . . defendant waived its right to contest the amount of withdrawal liability calculated by plaintiffs, and that amount thus became due pursuant to 29 U.S.C. § 1401(b)(1).").

Here, the Pension Fund determined that defendant had completely withdrawn and calculated the value of defendant's withdrawal liability, in accordance with 29 U.S.C. § 1391, as

$164,962. (See Grancio Decl. ¶ 37; Compl. ¶ 32.) Because defendant did not contest the finding that it had withdrawn from the Pension Fund or challenge the withdrawal liability assessment, defendant waived its right to contest the amount of withdrawal liability. 29 U.S.C. §§ 1399(b)(2), 1401(a)(1). Accordingly, I respectfully recommend that plaintiff be awarded $164,962 in withdrawal liability.

### D. Prejudgment Interest

Under 29 U.S.C. § 1399(c)(6) and 29 C.F.R. § 4219.33, the Pension Fund is entitled to assess interest on delinquent withdrawal liability and to adopt rules for determining the applicable interest rate. (See Grancio Decl. ¶ 45; Compl. ¶ 32.) The Pension Fund adopted a monthly interest rate of eight percent for delinquent withdrawal liability payments. (Compl. ¶ 13; Grancio Decl. ¶ 46; Ex. J, at 8, ¶¶ 4-5.) Under 29 C.F.R. § 4219.32(d), interest on withdrawal liability accrues from the date of the missed payment that gave rise to the delinquency, which here is May 1, 2024. (See Grancio Decl. ¶ 47.) I therefore recommend that plaintiff be awarded prejudgment interest on the $164,962 in withdrawal liability at the rate of eight percent per month from May 1, 2024 to the date of judgment.[1]

### E. Liquidated Damages

Plaintiff also requests liquidated damages in the amount of $32,992.40, equal to twenty percent of the withdrawal liability of $164,962. (Compl. at 6; Pl.'s Mem. at 12.) Pursuant to ERISA § 502(g)(2)(C), an employer that fails to comply with its obligations to pay withdrawal liability becomes liable for liquidated damages in an amount equal to the greater of the interest due on the withdrawal liability or up to twenty percent of the withdrawal liability as

---

[1] Plaintiff calculated the interest as $7,411.36 as of November 26, 2024. (Grancio Decl. ¶ 49, Ex. N.)

9

provided in the collective bargaining and trust agreements. 29 U.S.C. § 1132(g)(2)(C). In addition, under section 9.1(E)(iii) of the Trust Agreement, in any suit by the Joint Industry Board to collect withdrawal liability the employer shall be liable for liquidated damages equal to the greater of (a) the amount of interest charged on the unpaid balance, or (b) twenty percent of the unpaid amount awarded. (Compl. ¶ 24; see also Grancio Decl. ¶ 23, Ex. I.) Accordingly, plaintiff is entitled to $32,992.40 in liquidated damages, equaling twenty percent of defendant's withdrawal liability. See, e.g., Deianni v. New Media Printing, No. 11 CV 5267, 2012 WL 3842596, at *6 (E.D.N.Y. Aug. 17, 2012), report and recommendation adopted, 2012 WL 3839618 (E.D.N.Y. Sept. 5, 2012).

F.  Attorney's Fees

Plaintiff also requests $5,778.50 in attorney's fees. (Pl.'s Mem. at 14.) Pursuant to ERISA § 502(g)(2)(D), plaintiffs are typically entitled to payment of their reasonable attorney's fees and costs incurred in a successful action to obtain withdrawal liability. See 29 U.S.C. § 1132(g)(2)(D). The Trust Agreement additionally provides for an award of attorney's fees and costs in connection with an action to collect delinquent withdrawal liability. (Grancio Decl. ¶ 24, Ex. I § 9.1(E)(iii).)

District courts "enjoy[ ] broad discretion in determining the amount of a fee award." Vincent v. Comm'r of Soc. Sec., 651 F.3d 299, 307 (2d Cir. 2011). When considering applications for attorney's fees, courts in this circuit determine the reasonableness of attorney's fees using the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d

10

154, 166 (2d Cir. 2011). As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records. See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam). Plaintiff has satisfied this requirement. (See Grancio Decl., Ex. O.)

   The court next assesses whether plaintiff's counsel requests a reasonable hourly rate. Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Loc. Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (alteration and citation omitted). A judge may determine prevailing rates based on evidence presented, knowledge of rates charged in the community, and "the nature of representation and type of work involved in a case." Arbor Hill, 522 F.3d at 184 n.2; see Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).

   Plaintiff's counsel, Virginia & Ambinder, LLP ("V&A"), billed the Joint Industry Board for the services of founding partner Charles R. Virginia at a rate of $475 per hour, partner Adrianna R. Grancio at a rate of $410 per hour, and legal assistants Eva Keating and Abigail Frankel at a rate of $155 per hour. (See Grancio Decl. ¶¶ 53-57, Ex. O.) In similar ERISA matters, courts in the Eastern District of New York have awarded fees in the range of $300 to $450 per hour for partners. See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. IKNA Constr. LLC, No. 24 CV 561, 2025 WL 447731, at *17 (E.D.N.Y. Jan. 15, 2025), report and recommendation adopted, 2025 WL 777108 (E.D.N.Y. Mar. 11, 2025);

11

Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(k) Sav. Plan v. Tri-C Mech. Inc., No. 22 CV 1590, 2024 WL 4290823, at *15 (E.D.N.Y. Sept. 10, 2024), report and recommendation adopted, 2024 WL 4287353 (E.D.N.Y. Sept. 25, 2024).  Thus, $410 per hour for Ms. Grancio is within the range of rates recognized as reasonable in this district for a law firm partner, but I recommend reducing Mr. Virginia's rate for his tenth of an hour of work on this case from $475 to $450.

The requested hourly rate of $155 per hour for legal assistants is higher than the rate typically awarded for legal assistants in this district.  See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Kore Contracting Corp., No. 24 CV 3235, 2025 WL 825049, at *15 (E.D.N.Y. Mar. 14, 2025) (reducing hourly rates of V&A legal assistants to $90 per hour); IKNA Constr. LLC, 2025 WL 447731, at *18 (same); Tri-C Mech. Inc., 2024 WL 4290823, at *15 (same); Finkel v. O.H. & M. Elec., Corp., No. 23 CV 1076, 2024 WL 4648136, at *6 (E.D.N.Y. Jan. 19, 2024) (reducing V&A legal assistant rate to $100 per hour).  I recommend awarding fees for services rendered by legal assistants at the reduced rate of $100 per hour.

The court next looks to the reasonableness of the number of hours billed.  To determine the reasonableness of the hours spent on the litigation, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday, 42 F.3d at 134). "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).  Here, plaintiff's counsel seeks compensation for 19.8 hours of work.

12

(Grancio Decl. ¶ 59, Ex. O.)  The billing records indicate that the work performed was necessary to the litigation and do not suggest that the attorneys engaged in duplicative, excessive, or unnecessary work.  Moreover, these hours are well within the range of hours expended in similar default judgment cases.  See IKNA Constr. LLC, 2025 WL 447731, at *19 (collecting cases).  I therefore recommend awarding plaintiff $5,270 in attorney's fees $((.1 \times \$450) + (10.5 \times \$410) + (9.2 \times \$100))$.

G.  Costs

Finally, plaintiff requests $1,040.46 in costs, consisting of the court's filing fee and charges for service of process, postage, and computerized research.  (Grancio Decl. ¶ 60, Exs. O, P.)  Under ERISA § 502(g)(2)(D), plaintiffs who prevail in enforcement actions are entitled to recover reasonable costs.  See 29 U.S.C. § 1132(g)(2)(D).  The categories of costs plaintiff requests are recoverable as a matter of course.  See, e.g, Kohari v. MetLife Grp., Inc., No. 21 CV 6146, 2025 WL 100898, at *12 (S.D.N.Y. Jan. 15, 2025) (granting reimbursement of costs for, *inter alia*, computerized research, copying and travel); Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d. 277, 290-91 (E.D.N.Y. 2010) (awarding costs for filing fees, service, postage, and photocopying).  Accordingly, I respectfully recommend that plaintiff be awarded $1,040.46 in costs.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiff's motion for default judgment be granted and that plaintiff be awarded $204,264.86 in damages, consisting of: (1) $164,962 in withdrawal liability; (2) $32,992.40 in liquidated damages; (3) $5,270 in attorney's fees; and (4) $1,040.46 in costs.  I further recommend that plaintiff be awarded

13

prejudgment interest on the withdrawal liability at the rate of eight percent per month from May 1, 2024 to the date of judgment.

Plaintiff is directed to serve a copy of this report and recommendation on defendant by regular mail, and to file proof of service with the court within ten days of the date of this report and recommendation. Any objections to this report and recommendation must be filed electronically within fourteen days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
September 8, 2025